of America at All. Oral argument not to exceed 15 minutes per side. Mr. Fadel for the Plaintiff Appellant. Thank you. Timothy Ronald Fidel on behalf of the Appellant to Plaintiff, International Union of Operating Engineers. May it please the Court, at this time I would respect the  minutes of rebuttal time. In the time of ancient Rome, it was a pagan tradition for parties that wished to enter into a legally binding agreement to affix a wax seal to that written document and then make an impression of their front tooth on that very seal. Your client isn't part of the contract here. Your client doesn't have anything to do with the contract. There's no signature, there's no intent, there's nothing to bind the local union to the contract. The local union in this case, Judge Murphy, is a local affiliate of the International Union of Operating Engineers. The International Union of Operating Engineers was a contracting party, negotiated and executed the agreement for the specific benefit of Local 18. But that's fine. It doesn't mean that your client is a party to the contract. As long as my client is a third party beneficiary under the contract, it is entitled to enforce the terms and provisions and the benefits of that agreement in court. In 1954, in Miami Beach... Your client is only suing the International though, of the other... No, Local 18, the local affiliate of the International Union of Operating Engineers, is suing the Labor's International Union, headquartered in Washington, D.C., the party that negotiated and executed the agreement. It is suing the District Council for the laborers here in Ohio, which is a parent body for the laborers' locals in Ohio, as well as... You're not suing the locals? We are suing the locals. How are they a party? They are bound by virtue of the Constitution, their own bylaws, the Labor's International Union of North America's Constitution, the bylaws for that entity, as well as the Constitution and bylaws for the District Council, as well as each individual local's bylaws, requires them... How do you answer the analogous question to Judge Murphy's question? If they're not a party to the contract, there's some other provision which says that they have to assist the party to the contract in complying with it, but they're not parties to the contract. You can't use a third party beneficiary analysis for them, can you? No, but by virtue of entering into the agreement on the international level, it suffices to bind the subsidiaries. The international is made up of nothing but its subsidiary members. The international represents no members. So it's an agent kind of thing? It is a principal agent theory in that regard, yes. The international unions, let's go through a hypothetical. One union represents a homeowner. Another union represents a painting company. The painting company and the homeowner enter into a contract to have the house painted. You are, your client, is the son of the homeowner, and the father who owns the house says, in exchange for you painting my house, I want you to pay my son's tuition at the local high school. The son then sues the painter and the local high school to get the tuition paid that hasn't. Isn't that basically what we have here? No, what we have here is a question of whether or not Local 18 is an intended third party beneficiary of the 1954 memorandum. Well the son's the intended beneficiary of the homeowner, right? If in fact you can establish that the son was an intended third party beneficiary at the time the agreement was entered into with the intent of benefiting the son, then in fact the son could potentially recover under that theory if he's an intended third party beneficiary. Even though the son has no connection to the, I mean, all right, okay, all right. Go ahead. In any event, outside of having to affix a tooth into a wax seal, in 1954 in Miami Beach, those pagan traditions by and large were all gone. Parties were required if they wanted to enter into a valid written binding agreement, they were required to set ink to paper and using plain and unambiguous language set out in front of them what obligations they wished to reach. You're trying to say that Judge Boyko made a decision saying there wasn't a contract here. That's my understanding of the judgment. I don't know about my colleagues, and we'll discuss this in conference obviously, but it seems like a contract to me, okay? It seems much more unreasonable to think that the locals can sue the international unions both and the other locals based on that contract. There's nothing in there to show or to say that the locals had the rights that you seek to assert in this particular lawsuit. Agree? To the extent that the 1954 Memorandum of Understanding does not specifically identify Local 18 as a third party beneficiary, that is correct. Okay. More importantly, since we're here on the 12b-6, the complaint, I think we're looking for a tie in the complaint in your allegations, the tie that you assert here between that old contract written in Miami and this lawsuit. That's one question and the next follow up, and you can start with, you can address it at the same time if you can. This seems all of a sudden we're resurrecting this old document in as much as I think these arguments have gone on for all the years in the interim, and yet courts are not, actions are not brought like this one that I would know, I mean that you've cited to us. To answer the first part of your question, Judge Cook, the complaint does make the allegations sufficient to make a claim, at least a plausible claim under the 12b-6 standard, that Local 18 was in fact an intended third party beneficiary of that contract. The complaint alleges that the international unions, part of their purpose, the very purpose of the international unions, is in fact to enter into these types of agreements. Is that in the complaint? That is in the complaint. That is at, if you would, that is at paragraph 20 and at paragraph 15. And in that, what it's in essence saying, the complaint is saying, making a plausible claim for, is that the international unions are obligated under their own and empowered with the ability to enter into these types of binding agreements for the purpose of preventing jurisdictional disputes. As to the second branch of that question, whether wine or vinegar, it ages the same and it ages well. The fact that it's been 63 years or so since the agreement was entered into. With these sorts of disputes occurring regularly in America? Not necessarily. Not with the intended, as the complaint alleges, the intentional violations that the laborers have engaged in. Are these usually handled as unfair labor practices? No. This is a claim, this is a claim for breach of a jurisdictional agreement. I know what this one is, but typically when one union infringes on another's territory, it's handled by the NLRB under that, the auspices of that. The NLRB does handle them with the intention of resolving the jurisdictional dispute. The NLRB is charged. What do they look to? They look to various factors, but by and large there's only one they care about. Not the contract. Well, no, the contract is one. They will look to collective bargaining agreements between the parties to make a determination as to who should be awarded the work. The 1954 agreement was not intended to function as a vehicle for resolving the disputes. It was intended to function as a prophylactic to prevent the disputes from occurring in the first place. That if the party... Go ahead, Jim. I just want to follow on that. These supplemental authorities were given and whether we take judicial notice, I guess you could make some technical arguments, but they're public judgments. We can look at them in the sense that we could look at a precedent, right? Yes. And they seem to be resolving exactly these kinds of issues without even a nod to this agreement. How did that happen? That's not uncommon for the National Labor Relations Board. There are five factors that the board will generally utilize. It's not binding? I mean, it doesn't apply? The NLRB wouldn't look at that contract? They would look at it as one of the factors that they would utilize. Did they look at it? They did look at it. Where? I looked through these opinions last night. I never saw it mentioned at all. I was equally frustrated by that as well, Your Honor. By and large, the board's opinions are strictly looking to award the work. Strictly looking at what? Well, who to award the work to. Who gets the work? That's the issue, right? No. The issue is whether or not the laborers breached the contract they entered into in 1954. Yeah, but the contract, you say, determines who among the two contracting parties. Who gets the work? Who gets the work, correct. Among themselves. We're still deciding who gets the work. Here, the NLRB looks at it. I'm just curious. I'm not saying this is binding or anything. I just wonder what's going on. It's the same underlying question Judge Cook has. If this is really a contract that operates to allocate who gets the work when forklifts are involved, right, you would think that in three cases before the NLRB, it would have been argued sufficiently strongly enough that they might have even mentioned it in their opinions. But they didn't, right? No, they did not. And that is not. Can you explain that other than saying you don't have to? I will do my best to understand what the board does in a Section 10k hearing. There are five factors that they utilize. One of the five factors is collective bargaining agreements. That factor is not controlling. And often it is not even addressed. More often than not, nine times out of ten, or really 99.99 times out of 100, the board is solely concerned with employer preference. All the board does in making an award under Section 10k of the Act, it goes through the motions of looking at four other factors. But the primary factor it looks at is who does the employer want. Doesn't that sort of undermine the argument that this thing from 1954 is a contract that's intended to control that kind of thing? When it can't, by its terms, actually control it because when there's a dispute, the NLRB decides without respect to it? I mean, that's what I'm not understanding. The 1954 agreement cannot control what the National Labor Relations Board does when a jurisdictional dispute arises and the board is required to make an award of the work. The 1954 agreement can, however, influence the way that laborers approach their tasks and their job of going after certain work. To the extent that the... You say going after certain work. Correct. They both are on the scene of these construction places. Correct. For both kinds of people. Correct, but it's one... It's not like the contract. I mean... It is different. There's one that is different from being on the scene and being available to the work to actively courting it in flagrant disregard of an agreement that has stood the test of six decades. And that's what the allegations are here in this case. That over the course of the last two years, the laborers have made a strong push in the direct contradiction of the 1954 agreement in order to capture this work in violation of the promises that they made some 60 years ago. And I know your time expires, but where has that testing occurred? In federal courts or in the agency assigned to this work? Say they test that, they've tested it, the 1954 agreement. They've tested... You mean by seeking work? By seeking work. By actually going out and actually seeking the work to attempt to collectively negotiate into their collective bargaining agreements that work, that's in contradiction of the 54. I'm noting the absence of federal court cases similar to this one. Yeah, it is a rarity, I would say, Your Honor, that two labor unions sue each other over jurisdictional agreement, but it's not unheard of. Labor... You explain 1954 to 2012 as there really hasn't been that much... as much violation as in the last two years. I mean, she's... I take Judge Hook to be asking... She's been around since 54. Why hasn't it ever arisen before? And you're saying because of a push two years ago. Granted, there will always be and there always have been instances where laborers performed work since 1954 in contradiction of the agreement's terms, but never were they active and willful violations to the extent that the Ohio laborers have engaged. To the extent that the Ohio laborers began this active push around 2012, it far surpasses any other incidental violations and it approaches the unintentional malicious violation of the agreement. Good morning. May it please the court, my name is Bill Mangano and I represent all of the laborers' organizations in these proceedings. To start, let's be clear that Local 18 is not one of the parties that signed this document. Labor's District Council of Ohio, which is an intermediate organization of LIUNA, did not sign this document. None of the affiliates... Can they be third party? I mean, nobody's saying they did, okay? You know that. But what do you quarrel with the third party beneficiary analysis that... Well, the third party... Your Honor, the third party beneficiary analysis would only go to whether or not Local 18 could sue LIUNA. In this particular case, the only allegation in the complaint... Does it not go to whether they can sue the locals? No, Your Honor, because the locals are not parties and you cannot extend the third party analysis to parties that are individuals or entities that are not parties to the agreement. Certainly those individuals who didn't sign the document never intended that they might be sued in the future by some third party beneficiary. The argument as to those is an agency argument. Well, the agency argument is problematic, Your Honor. As a part of the 12B6 analysis, this court is allowed to review documents that are referenced in the complaint. One of the documents that are referenced in the complaint is the LIUNA constitution. The LIUNA constitution makes clear, as do all international constitutions, that LIUNA is not an agent of the district councils or the local unions. And the local unions and the district councils are not agents of the internationals. It goes on to say that the LIUNA can never be responsible for the autonomous acts of its local affiliates. So when we have a complaint that alleges, that makes an allegation, that references a document and that document renders the allegation untrue, this court and the court below did not have to presume the truth as to... That is true. We believe that the claim against LIUNA itself should be dismissed because there was no underlying contract. This document, the district court judge correctly concluded that this document was not a contract and therefore there was no plausible claim for relief under Section 301. We've reached this conclusion by doing exactly what federal law requires. The district court correctly looked at the language of the document. This court long ago in Yardman says, let's look at the language of the agreement. Let's then look at the context in which the agreement arose. And clearly Judge Boyko said, right at the beginning of the document, first of all, it's not even called an agreement. Can I ask you a question? Now that I've figured out what LIUNA is, it took me a few minutes to determine that, not being a labor lawyer, but in any event, it seems to me that the district court here looked at the memorandum of understanding and applied traditional Ohio contract law. And I'm not quite sure he should have done that. Isn't the question whether or not under federal labor policy and 29 U.S.C. Section 158, the document would be quote significant to the maintenance of labor peace, close quote. There's all kinds of cases that stand for that. And that the sort of freely negotiated agreement that the unions arrived at in 1954 served that policy. So it seems to me that under all four points of the federal labor law and the cases that were to apply, there's no question this memorandum of understanding is a contract that binds the two, I should say, global or international organizations, correct? No, I respectfully disagree. Here are the reasons why. First of all, if we look at state law, even in Yardman, this court has acknowledged that state law is important and district court judges are allowed to rely upon it to fill in gaps and to provide governing principles of contract law, as long as it doesn't contradict federal labor policy. One of the federal labor law judges, he had a very narrow view about this in evaluating that document. And he looked for the formalities of any contracts, more formal contracts. This question that I think this court faces is whether or not this evidence is a meeting of the minds. Yeah, it doesn't have a net venue clause. Yeah, it doesn't have a lot of the formalities one might find in a different kind of contract. But if Judge Boyko is wrong in that analysis, what is your next best argument? It's coming, Your Honor, I promise. That's exactly my question. So the issue when we talk about agreements that foster labor peace, and that line of cases really begins with retail clerks versus lye and dries good. And in that particular case, what was at stake was not whether, in fact, the strike settlement agreement was an agreement, but whether because it wasn't a collective bargaining agreement, one that was negotiated between a union and employer dealing wages, terms, and conditions, whether it was a contract within the meaning of 301. That court, that very first court that talks about agreements that foster labor peace didn't even analyze whether or not the strike settlement agreement was, in fact, an agreement. Are you still arguing that it's not a contract? I am, yes. Okay. Could you move on to your next argument and assume, hypothetically, we're not deciding it right now, assume that we disagree with you on that. Okay. Then what? If I assume, well, Your Honor, I think it's worth noting that when we talk about agreements that foster labor peace, that this isn't one of those agreements either. One of those, when we talk about in the... Okay, so assume it is, assume that the panel disagrees with your disagreement and there's a binding contract, notwithstanding what Judge Boyko said. How do you win the case if we make that assumption? Well, Your Honor, we win the case because the policy here that's at stake is the one that's articulated in Section 10 of the National Labor Relations Act, and that is that all parties to a jurisdictional dispute, including the one to empower to ensign the work, that is an employer, deserves a setting to be heard and a final determination of their dispute by the board. We argue that regardless of what Judge Boyko said, and even if you disagree with Judge Boyko's determination, we argue that this case is, it falls under Garmin preemption, and that this court therefore does not have jurisdiction to hear the case and must defer to the exclusive competence of the National Labor Relations Board. It is our view that... Before you get into all that, assume Judge Boyko was incorrect, assume the memorandum of understanding is a contract. Go to the complaint that the engineers local filed and read that they made an allegation that the labor's local, as well as all the other individuals and entities they're suing, are bound by the contract. To go to Judge Cook's earlier question, under Iqbal and Twombly and 12B6, isn't their allegation sufficient to survive a motion to dismiss if we find that a contract existed? Well, first of all, there's two questions there. Really, the first one is, is there sufficient allegations to assert that the local 18 is an intended third-party beneficiary? Yes, sir. It is our view that under the standard articulated in Twombly and Iqbal, that there isn't. All local 18 did is say that we are intended third-party beneficiaries, period. They didn't... Well, they referenced the... As your brother counsel argues, the complaint references the constitutions of the... I don't know. There were constitutions, some documents that are legal. You could also look to, I take it. What's your response to that? The constitutions... First of all, to make the analysis or to make the conclusion that by virtue of the constitution, you are a third-party beneficiary, that is a legal conclusion and it doesn't deserve the presumption of truth. As to the Labor's District Council and the local affiliates, I've already indicated that their constitutions directly contradict what is alleged in the complaint because the document that is actually referenced in the complaint renders the allegations untrue. They don't deserve the presumption of truth. Just be specific. What are you saying there? I'm saying specifically that the local 18 makes the assertion that even though Labor's District Council of Ohio and the several local affiliates are not mentioned in the document, that they are bound by virtue of the constitution. Yes. Okay. He then goes on to say that they're bound by virtue of the constitution because the international is empowered with drafting jurisdictional agreements or memorandums of understanding between the parties. That's wrong because... That's all wrong because, well, it's not wrong, Your Honor, but what it is, it's first of all, it's a legal conclusion, number one, and number two, none of that is in the document that he references in the complaint. So there is no presumption of truth and there is nothing for the district court to rely upon. The allegation is unsupported by the document that was attached. That's correct, Your Honor. Well, one particular allegation, paragraph four, states, this is Mr. Fidel's complaint, Defendant Labor's International Union of North America, LIUNA, is and at all times mentioned herein was an unincorporated association commonly known as a labor union headquartered in Washington, D.C. with the power to issue charters to local unions and district councils which necessarily include the remaining defendants listed herein. As an international union, LIUNA is vested with the authority to decide policies and to enter into agreements that are binding upon its local affiliates. Now, that may be entirely wrong, but it seems to me that the time to demonstrate that it's when all the documents are in and the parties have the opportunity to file a summary judgment motion, right? No, Your Honor. Actually, under the standards developed by 12b6 or under 12b6, the court is allowed to review documents that are referenced in the complaint and that those become a part of the pleadings. Both articles two and article nine that are referenced in paragraph four of the operator's local 18's complaint do not refer to any agreements between unions and other unions. The only reference is agreements between employers and unions. It doesn't say anything that would suggest or even remotely support the fact that they're vested with the authority to decide policies and to enter into jurisdictional agreements that are binding upon its local affiliates. And that again, I believe, is a legal conclusion not worthy of the assumption. Well, it's an interpretation of a contract. That's correct, Your Honor. Let me ask you this. Since I guess at this point of the progression of the argument we're talking about plausibility of allegations, right? What would you say this document was intended to do? Okay. Your Honor, our view is that it was simply a wish list. It was a statement of what both- It doesn't read like a wish list. Well, Your Honor- It looks like a, but it looks like, you know, this is the boundary between our two backyards. We've been arguing about it for years. The boundary goes from the post to the swimming pool. Right. Right? It doesn't say, in such an agreement, now I'm not going to get into real estate law, but such an agreement would be a contract in the nature of everyone knows that means I have property rights on one side of the line. You have property rights on the other side of the line. You can't go over the line. We know what that means even though the only thing said there was this is the line. They're drawing a line here. Assume at least that they're drawing a line here. What was the effect of that supposed to be in your view?  principles that was to be used in an appropriate setting, such as the joint board for the settlement of jurisdictional disputes, which is sponsored by the National Building Trades. It was commonplace, and this is evident in the Supreme Court's case in Plasters, where if it was a jurisdictional agreement, these documents were reviewed and interpreted in those settings, and then- What setting is that? Is that like an arbitration or what? That's right, Your Honor. It's called the- It was called- It is. It still exists. It is the joint board for the settlement of jurisdictional disputes between member organizations. Both the operators and LIUNA at the time of 1954 were members. That seems- I must say that seems like a plausible argument, but in line with what Judge Murphy was saying, I mean, that seems like- You say this is binding in a sense because it guides how our negotiations will play out in this kind of forum, but it wasn't intended to extend to the other kind of forum. That seems like something you would- Well, the reason- You would resolve after- I'm out of time, Your Honor. I'm going to respond. Yes, please. While I'm talking, it seems like something that you would resolve after you got past 12b-6. Well, the reason why it's guidance is because- And the reason why the promises, if there are any in this document or illusory, is because the party that assigns the work isn't a party here. It's the employer. They're the one that- They are the only party that can control who does what work. Why are these unions in these arbitrations that you described? The only time that- Your Honor, the only time they're in those arbitrations is when the in those arbitrations. If you look at our McCartan case out of the Seventh Circuit, you will see that is exactly one of those cases where because the employer did not agree to be bound by this agreement, and that's the question that Mr. Fidel didn't ask or answer for you. The reason why it's so ineffective is because the employer is not bound by the agreement. The reason why the National Labor Relations Board has said it is of no consequence is because the employers aren't bound by the agreement. It takes a tripartite agreement to bind parties. Your time is up. Yes. Thank you very much, sir. Thank you for your time. Had the parties wished to make, limit the 1954 agreement to be a clarification for the Joint Board of Jurisdictional Disputes, you would think they would have put that in there. They would have indicated, this just is intended for us to resolve our differences in front of the Joint Board. They didn't. Appellant is asking your opinion. They didn't say what you say it says either. They just didn't say. No, that is. They said, here's the line. Well, what did they say? Looking at the four corners of the agreement and taking it piece by piece and reading each part in conjunction with the next part, in conformity with the next part, it appears that they were aware of a dispute, outlined specific procedures. I read it. It just seems to say, you know, if you're driving the forklift, you're in one group, and if you're watching where the stuff goes while the forklift is being driven, you're in the other group. I mean, it just allocates, it just draws the line. Yes. It doesn't say what for, it just says, here's the line. I think it clearly and unambiguously delineates the work between the two crafts for the purpose of doing just that. What I'm saying is, it's drawing a line. Correct. It draws a line. We're not arguing about where that line is now. Well, the intention for which it was drawn was exactly what Mr. McGannon won't acknowledge, which is to avoid jurisdictional disputes, to avoid having to go to the Joint Board. Well, I mean, you can say all that, but how do we know it? Certainly the agreement on its face doesn't say that. I mean, you're probably right, I guess, but I mean, it just draws the line. I mean, I don't see where it does anything else other than that. Well, the purpose, one of the factors that the courts look at to determine the meaning of a written agreement is a purpose and position of the parties at the time the agreement was entered into. The purpose and positions of the international unions, the exact purpose and position of them was to, one, their purpose was to effectuate agreements to avoid jurisdictional disputes. That's part of what they do. It's part of what they're charged to do. Under Section 10K of the Act, if you look at the congressional record supporting when that was passed, one of the things, I think it was Senator Thomas and Taft identified, was that they would hope by passing this resolution, which would afford the board the authority to determine the disputes, it would have the parties, the individual labor organizations, it would spur them to create contracts among themselves to avoid having the board do it in the first place. Seven years later, that was in 1943. It doesn't really keep the board from having to do it in the first place. No. So the board ignores it when they do it. Correct. Then the board is free to ignore it. The laborers are not. At best, it was designed with the intention of providing a disincentive for the laborers to go after work that had already been divided up by the terms of that agreement. That if the laborers were aware, entering into that contract, that they were aware they were entering into a binding agreement that would, in effect, prevent them in the future from going forward and pursuing that work lest they face a breach of contract action in federal court under Section 301. It is not designed as an end-all to prevent the disputes or to resolve the disputes. It's designed merely to give a disincentive for the laborers to engage in activity that would lead to disputes. And the operating engineers as well. It likewise binds the operating engineers. The operators know illusory promises. It is what they say they're promising to do. There's a bargain for benefit and burden for each party. If there are no further questions, I would... Thank you, Counselor. Thank you. This will be submitted. We'll do our best. Please call the next case.